.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JAMES FINNEY, et. al., )<br><br>*Plaintiff,* )<br><br>v. )<br><br>CLARK REALTY CAPITAL, LLC, et. al., )<br><br>*Defendants.* )<br> ) | Civil Action No. 1:20-cv-93<br>Hon. Liam O'Grady |

## <u>MEMORANDUM OPINION</u>

### Introduction

Currently before the Court are three motions for summary judgment. One motion for summary judgment has been filed by the Plaintiffs. Dkt. 159. The other motions for summary judgment have been filed by the Defendants. Dkt. 175; Dkt. 212. The Court has previously issued an Order on several motions to exclude expert witnesses made by the Plaintiffs and Defendants. Dkt. 285. Discovery has been completed and the current matters have been fully briefed by the Parties. These matters are now ripe for consideration.

### Factual Background

The Plaintiffs in this case are James Finney and Natalie Finney (the "Finneys") who have filed this suit as individuals and on behalf of their two minor children, L.F. and J.F. Dkt. 37 at 1-2. The Plaintiffs entered a written lease to live at a residential home located at 5404 Grist

Mill Co. South in Fort Belvoir, Virginia ("the residence") and lived at this address pursuant to a written lease from September 2017 until June 18, 2019. Dkt. 130 at 2. The Finneys entered into the lease with the Defendant, Fort Belvoir Residential Communities LLC ("FBRC"), who acted as their landlord. Dkt. 130 at 2. FBRC is a Delaware limited liability company acting as the landlord for military housing units pursuant to a military housing privatization contract.[1] Dkt. 74 at 2. At all relevant times, FBRC had a professional services agreement with a Co-defendant, Michaels Management Services, Inc. ("MMS"), to provide property management services for FBRC. Dkt. 130 at 2. MMS is a New Jersey limited liability company that provides management services for military housing. Dkt. 74 at 2.

When the Finneys moved into the residence, a written move-in inspection was completed that detailed the conditions of the home. *See* Dkt. 176-2. After moving into the home, the Finneys began to file a series of maintenance requests with MMS employees. The first request was made on January 29, 2018 and complained of "black water damage" in the master bathroom. Dkt. 176-3. The Parties dispute the extent of the subsequent communications between the Finneys and the MMS property managers—with regard to potential mold in the residence—until a service request was made on July 5, 2018. *See* Dkt. 130 at 3 ¶¶ 28-31. On July 5, 2018 a service request was created for the residence that said, "the resident states that there is mold in the master bathroom." *Id.* at 3. A maintenance worker responded to the service request the same day and reported that he "went check the bathtub caulk has mold. I remove it all around tub." *Id.* The maintenance worker removed all the caulk around the bathtub in the master bathroom and did not replace it. *Id.*

---

[1] FBRC's managing member is a Co-defendant named in the amended complaint, CRC Belvoir LLC, that in turn is owned by another Co-defendant named in the amended complaint, Clark Realty Capital, LLC. Dkt. 130 at 2. The Court has previously ruled that these two Co-defendants, named in the amended complaint, are not liable under a theory of corporate veil piercing. *See* Dkt. 276.

The Finneys next filed a complaint about the residence's master bathroom on April 1, 2019. *Id.* In response to the complaint, a service request was generated that read, "master bathroom smells. Plastic shower and wall and tub lining needs to be checked." *Id.* A maintenance worker responded to the request on April 5, 2019 and reported that there was no smell and took no remedial actions. *Id.* On May 16, 2019, James Finney made a request for an exception to the lease to have aerial mold testing performed inside the residence. *Id.* However, no testing was performed while the Finneys resided in the home. *Id.* On May 20, 2019, a service request was created for the residence detailing the "musty smell" in the bathroom and referencing the Finneys' complaints regarding possible hidden mold. *Id.* at 4. Over the course of the next month, three different third-party contractors conducted mold inspections of the Finney residence. *Id.* After the results of the second test, an MMS maintenance worker reported to the residence and cut a hole in the master bathroom wall. *Id.* Natalie Finney took a picture of the debris removed from the home. *Id.* The amended complaint alleges that after the hole was opened into the wall, Natalie Finney suffered respiratory distress and had to be taken to the emergency room the next day. Dkt. 37 at 23. The Finneys eventually were relocated to a hotel on June 18, 2019 and did not return to the residence. Dkt. 130 at 5. After the Finneys left the residence, extensive mold remediation efforts and testing began that was performed by the companies True North and Popowski Brothers Incorporated. *Id.*

On January 28, 2020, the Finneys commenced this lawsuit against the Defendants, FBRC and MMS, seeking damages under several provisions of Virginia state law. *See* Dkt. 1. Both Defendants have now filed Motions for Summary Judgment on all claims in the amended complaint under Federal Rule of Civil Procedure 56. Dkt. 175; Dkt. 212. The amended complaint

alleges the following remaining counts[2]: 1) Negligent Repair against FBRC and MMS; 2) gross negligence against FBRC and MMS; 3) violations of the Virginia Consumer Protection Act ("VCPA") against FBRC and MMS; 4) negligence *per se* against FBRC; 5) Breach of Contract against FBRC; and 6) constructive fraud against FBRC and MMS. *See* Dkt. 37. The Plaintiffs have filed a motion for partial summary judgment as to the factual issue of whether the Defendants violated provisions of the Virginia Residential Landlord Tenant Act ("VRLTA"). Dkt. 160.

**Legal Standard**

A party may move for summary judgment by identifying either a claim or defense, or a part of a claim or defense, on which summary judgment is sought. Federal Rule of Civil Procedure 56. Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact." *Id.* A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Fourth Circuit has held, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-248). "It is the responsibility of the party seeking summary judgment to inform the court of the basis for its motion, and to identify the parts of the record which it believes demonstrate the absence of a genuine issue of material fact."

---

[2] The Defendants' earlier Motions to Dismiss were granted in part and denied in part. *See* Dkt. 74.

4

*Hyatt v. Avco. Fin. Servs. Mgmt. Co.*, 2000 U.S. Dist. Lexis 13645, at 11 (E.D. Va. March 2, 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); aff'd, 22 F. App'x 81 (4th Cir. 2000).

**Discussion**

The Court will first discuss the arguments raised by the Defendants in their Summary Judgment Motions. The Defendants' Motions make similar arguments and will be discussed together. The Court will then discuss the arguments made in the Plaintiffs' Motion.

**1. There is a genuine factual dispute on the cause of the Plaintiffs' injuries.**

Both Defendants have argued that the Plaintiffs have not been able to demonstrate the proximate cause of their injuries as a matter of law. Previously, the Court has held that the testimony of the Plaintiffs' expert witnesses that is relevant to this issue is admissible (in whole or in part). Dkt. 282. The Court also agrees with the Defendants that the Fourth Circuit's holding and reasoning in *Westberry v. Gislaved Gummi AB* is applicable to the current case. 178 F.3d 257 (4th Cir. 1999). In *Westberry*, the Fourth Circuit held that differential diagnosis was an appropriate foundation for an expert to base his or her testimony regarding the onset of a medical condition. 178 F.3d at 262 ("Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated.") (*ref, Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252-253 (1st Cir. 1998)). In so holding, the Fourth Circuit recognized that causation could be found without quantifying specific levels of exposure to the harmful chemical in question. *Id.* at 264 ("while precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure are beneficial,

5

such evidence is not always available, or necessary, to demonstrate that a substance is toxic...") In *Westerberry*, the Fourth Circuit held that the testimony regarding the temporal proximity of the onset of the plaintiffs' symptoms in combination with the large quantities of chemical observed by the plaintiff was a sufficient basis for the expert to testify regarding causation. *Id.* at 264-265.

The current case is factually distinguishable from the circumstances in another case cited by the Defendants, *Zellars v. NexTech Northeast, LLC.* 895 F. Supp. 2d 734 (E.D. Va. 2012). In *Zellars*, the plaintiff alleged that there was a single acute exposure to a gas released from a broken refrigerator valve. *Id.* at 736. In that case, the plaintiffs' expert witnesses were not allowed to testify under Federal Rule of Evidence 702 because the experts had no knowledge of the toxicity of the specific gas or any factual basis on which to estimate a level of exposure. *Id.* at 741-742. In contrast—and as discussed in the Court's previous order—the experts the Plaintiffs rely on in the current case do have knowledge of the toxicity of the relevant substances. *See* Dkt. 282 at 4-7. The Plaintiffs have also pointed to several pieces of evidence from which the expert witnesses could infer the "actual level of exposure" to the harmful substances that the Finneys suffered. *Zellars*, 895 F. Supp. at 741 (quoting *Westberry*, 178 F.3d at 263). This evidence—that is identified in the Plaintiffs' memoranda—includes the testimony regarding the persistent moldy smell in the master bathroom, the pictures of the wall removed from the bathroom, the aerial testing performed pre-remediation, and the (disputed) temporal proximity of the onset of Natalie Finney's emergency room visit and the removal of the portion of the bathroom wall. *See* Dkt. 230 at 13-14.

Under Virginia law, proximate cause is "ordinarily a question of fact for the jury." *Miller v. Charles E. Smith Mgt., Inc.*, 1999 U.S. App. LEXIS 1013 at *9 (4th Cir. 1999) (citing *Brown*

*v. Koulizakis*, 229 Va. 524, 531 (Va. 1985)). Accordingly, the Court finds that there is a genuine dispute of material facts regarding the proximate causation of the Plaintiffs' injuries. It would not be appropriate to grant summary judgment for the Defendants on these grounds.

### 2. The Plaintiffs' expert witness can define a relevant standard of care.

The Defendants have argued that summary judgment is appropriate on the claims for negligent repair because the Plaintiffs cannot establish a standard of care that the Defendants were bound to act in accordance with. In a previous Order, the Court explained that:

> A landlord does not have a common law duty to make repairs after delivering possession to the tenant, but where a landlord enters leased premises for the purpose of making repairs they must be performed with reasonable care. *Sales v. Kecoughtan Hous. Co.*, 279 Va. 475, 479-480 (Va. 2010). The allegations in the Amended Complaint give rise to the inference that the Michaels Affiliates were landlords, entered the residence to make mold-related repairs by and through agents, and repeatedly failed to remediate the mold problem.

Dkt. 74 at 15 n. 5. From the memoranda submitted by the Plaintiffs, it is apparent that testimony of their expert witness is sufficient to establish a standard of care. Dkt. 231 at 15. Although the Defendants argue that there is no duty to perform an inspection as discussed in the expert's report, this is not a proper characterization of Mr. Yeskolski's testimony. Dkt. 213 at 11. Although Mr. Yeskolski does call for an inspection that is necessary after a mold remediation has taken place, Mr. Yeskolski outlines why this is a "post-remediation verification" and it is part of the applicable standard of care necessary during the performance of the mold related repairs. *See* Dkt. 176-18 at 30. Importantly, the codes and documents that Mr. Yeskolski relies upon to formulate his opinion are the type of materials that are identified as determining the requisite standard of care under Virginia law. The Virginia Code establishes that standards of mold remediation should be based on professional standards and regulatory documents such as those promulgated by the EPA. See Va. Code Ann. § 8.01-226.12. An expert that relies on these types

of documents, such as Mr. Yeskolski, can establish a relevant standard of care relating to mold remediation. *Sanders v. UDR, Inc.*, 2011 U.S. Dist LEXIS 24198 at *3-4 (E.D. Va. March 10, 2011).

A genuine dispute of material fact exists regarding the standard of care required to support the Plaintiffs' claims of negligent repair against the Defendants. It would not be appropriate to grant the Defendants' motions for summary judgment on these grounds.

### 3. The claims for gross negligence

The Defendants have moved for summary judgment on the Finneys' claims for gross negligence. The Defendants argue that there is no evidence to support a claim that could demonstrate a complete lack of diligence. Dkt. 176 at 14 (quoting *Colby v. Boyden*, 241 Va. 125, 133 (Va. 1991). Gross negligence in Virginia is defined as "a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." *Chapman v. City of Virginia Beach*, 252 Va. 186, 190 (Va. 1996) (internal quotations omitted) (quoting *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378 (Va. 1945)); *see also Lufti v. United States*, 527 Fed. Appx. 236, 245 (4th Cir. 2013). Further, gross negligence can be found from the "cumulative effect" of several acts of negligence which when viewed in total lead to an inference of the "total disregard for another's safety." *Id.* (citing *Kennedy v. McElroy*, 195 Va. 1078, 1082 (Va. 1954)).

With all inferences drawn in favor of the Finneys as the non-moving party, it is apparent that there are multiple acts or omissions from which a reasonable factfinder could infer gross negligence. The Finneys argue the disputed facts are that there were repeated attempts and requests made for mold remediation that were ignored by the Defendants, that the Defendants had knowledge of mold in the residence and other similar residences from the complaints of

other tenants, that mold was visible in the residence for over a year before the remediation attempts were made, and that an attempt at remediation was undertaken in a dangerous manner that may have led to the hospitalization of Natalie Finney. *See* Dkt. 230 at 17-19. The Court finds that the evidence in the record supports the existence of a genuine dispute of material facts regarding the claims for gross negligence. Therefore, the Defendants' motion for summary judgment on the count of gross negligence must be denied.

### 4. The claims for negligence *per se.*

The Defendant FBRC has moved for summary judgment on the count of negligence *per se.* Dkt. 176 at 16. The Court has previously held that Va. Code. Ann. §55-225.3 can form the basis of a claim for negligence *per se.* Dkt. 74 at 24 (quoting *Cherry v. Lawson Realty Corp.*, 295 Va. 369, 377 (Va. 2018)). As discussed above, the Finneys' expert has proffered admissible testimony regarding mold remediation and the relevant professional standards established under this Virginia law. *See* Dkt. 176-18 at 38. There is also a genuine factual dispute as to whether there was "visible mold" that was observed during the move-in inspection. *See* Dkt. 176-2. Accordingly, the claim for negligence *per se* must survive the motion for summary judgment.

### 5. The claims for breach of contract and damages.

The Defendant FBRC has moved for summary judgment on the breach of contract claims on the basis that there is no evidence supporting breach.[3] The Court agrees with the Plaintiffs that the VRLTA is incorporated into the residential lease. Dkt. 230 at 23 (citing *Maxey v. Am. Co.*, 180 Va. 285, 290 (1942)). As discussed above and in a previous Order, Mr. Yeskolski's

---

[3] Although the Defendant FBRC argues that there was a prior breach of the contract by the Plaintiffs, FBRC has presented no evidence from which the Court could find that the purported breach is material. *See Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 732 (Va. 2012) (holding a breach must be fundamental to the contract to be material) (citations omitted) Without supporting evidence, FBRC's argument does not affect the Court's decision regarding summary judgment on the breach of contract claim.

testimony is admissible and relevant to establishing the requirements of the VRLTA. Dkt. 282 at 8. Like the claims that the Finneys have made for negligence, there is evidence to support that there may have been a breach of the contract by FBRC. The Court also finds that the Plaintiffs have produced evidence that could support an award of economic damages, namely through the testimony of the Finneys themselves. *See e.g.* Dkt. 176-6 (excerpt of the deposition of Natalie Finney). A genuine dispute of material fact exists as to whether there was a breach of contract and as such the motion for summary judgment cannot be granted.

### 6. The claims made for violations of the VCPA

The Defendants move for summary judgment on the claims made under the VCPA on the grounds that there is no evidence that the Defendants made a misrepresentation and that there is no evidence that the Defendants are a 'supplier' as defined by the statute. Dkt. 213 at 19-20. The VCPA prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code. Ann. §59.1-200(A). The Plaintiffs have argued that Defendants committed fraudulent acts by withholding material information regarding the inspection for mold on May 20, 2019 and the mold testing performed on June 5, 2019. Dkt. 230 at 27. Virginia courts have routinely held that concealment or withholding information can be considered a fraudulent act. *Guy v. Tidewater Inc. Props.*, 41 Va. Cir. 218, 230 (Va. Cir. Ct. 1996) (collecting cases) (The circuit court held in a decision regarding a claim brought under the VCPA that "The Virginia Supreme Court has continually emphasized in the fraud context that concealment can be the equivalent of an express misrepresentation.") (citations omitted). As held in the Court's previous Order, the Finneys were consumers of mold remediation services. Dkt. 74 at 20. The Finneys have demonstrated ample evidence from which a factfinder could infer that material information was concealed or withheld regarding these mold remediation services.

A supplier under the FCPA is defined as "a seller, lessor, licensor or professional who advertises, solicits, or engages in consumer transactions…" It is undisputed that the Defendants leased the residence to the Finneys. Dkt. 130 at 1. Through their agents, the evidence shows that the Defendants engaged in mold remediation services. *See Id.* at 3-4 (the undisputed facts show that the Defendants' agents responded to complaints about mold in the residence and that the Defendants were responsible for engaging the services of the third-party mold remediation specialists). The record shows that the Defendants are a lessor who engaged in a consumer transaction. As such, the VCPA claims are applicable to the Defendants. A genuine dispute of material facts exists regarding the claims under the VCPA. Summary judgment on these claims must be denied.

### 7. Constructive Fraud

The Defendants move for summary judgment on the claims of constructive fraud. To prove fraud under Virginia law, a plaintiff must provide evidence that shows "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party mislead." *Fessler v. IBM*, 959 F.3d 146, 153 (4th Cir. 2020) (quoting *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 477 (4th Cir. 2006)). Constructive fraud does not have the same *scienter* requirement as actual fraud, and a plaintiff must only demonstrate that the misrepresentation was made "innocently or negligently." *Id.* (quoting *Sales*, 279 Va. at 481). As discussed with the claims made under the VCPA, the Finneys have demonstrated evidence from which a reasonable factfinder could infer a fraudulent act was made by concealment or omission. The disputed facts in the present case could support a claim for constructive fraud. *See Howarth v. Rockingham Publ'g Co.*, 20 F. Supp. 2d 959, 970 (W.D. Va. 1998) ("To constitute either type of fraud, an affirmative

representation need not have been made, however; fraud may consist of the suppression or omission of that which is true as well as the articulation of that which is false") (citations omitted).

Based on the evidence, a genuine dispute of material facts exists as to whether a fraudulent misrepresentation was made. Summary judgment cannot be granted on the claims for fraudulent concealment.

### 8. Punitive Damages

The Defendants have moved for summary judgment to preclude an award of punitive damages. Dkt. 213 at 17. Punitive damages are awarded under Virginia law when the evidence shows a defendant's negligence is "so willful or wanton as to evince a conscious disregard of the rights of others." *Booth v. Robertson*, 236 Va. 269, 273 (Va. 1988) (A .22% blood alcohol content demonstrated willful disregard for the safety of others when operating a car). Virginia courts have found this level of negligence exists when the defendant is aware that their conduct has the potential to cause injury to another. *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, (Va. 1992) (citing *Griffin v. Shively*, 227 Va. 317, 321 (1984)). Ordinarily, the award of punitive damages is reserved for only the "most egregious conduct." *Phillip Morris Incorporated v. Emerson*, 235 Va. 380, 407 (1988). The Fourth Circuit has construed Virginia law as precluding "a finding of willful and wanton negligence when a defendant has shown some care for the safety of others." *Dudley v. Bungee Int'l Mfg. Corp.*, 1996 U.S. App. LEXIS 1267 at *9 (4th Cir. 1996) (citing *Emerson*, 235 Va. at 409).

At this time, the Plaintiffs have submitted evidence from which a factfinder could infer that the Defendants may have been aware of mold in the residence based on the complaints of the previous tenant. Dkt. 160-8 (The deposition of Brian Riddle). The Plaintiffs' expert has

proffered that he does not believe the Defendants followed their own procedures for mold inspection and remediation. Dkt. 176-18. There is evidence in the record that may imply that the Defendants expressly stopped aerial testing of all the residences in the Fort Belvoir community although it may have been necessary. Dkt. 160-9 at 3. As discussed above, there is evidence that the Defendants may have concealed or omitted information that would have been relevant to the health concerns that the Finneys had for themselves and their young children. At this time, there is evidence that could support the award of punitive damages. Summary judgment as to that part of the claims will not be granted.

### 9. Plaintiffs' motion to find violations of the VRLTA

The Plaintiffs have moved for summary judgment asking the Court to find that the Defendants violated provisions of the VRLTA.[4] Dkt. 160 at 3. The Plaintiffs argue that there is undisputed evidence that the statute was violated when the Finneys did not receive a written notice regarding the presence or absence of mold, the premises were not fit and habitable, and the Finneys were not timely relocated. *Id.* The Defendants have argued that the move-in and inventory form meets the requirements of the written notice required by the VRLTA. Dkt. 228 at 5; *see also* Dkt. 176-2. The Defendants have pointed to the reports of two expert witnesses who will testify that the residence was fit and habitable as required by the statute. *See* Dkt. 173-1; Dkt. 173-3. This evidence from the experts' reports also disputes whether the "mold condition in the dwelling unit materially affects the health or safety of any tenant" that is required by the relevant provision of Va. Code. Ann. §55.1-1231 (2021). There is a genuine dispute of material

---

[4] The Defendants argue that the claim for violations of the VRLTA has been dismissed by the Court. Dkt. 228 at 2. As discussed above, the VRLTA is incorporated into the Plaintiffs' claims for breach of contract. Accordingly, the Court will construe the Plaintiffs' motion for summary judgment as a motion for summary judgment on part of the claim for breach of contract.

fact as to whether the Defendants violated a section of the VRLTA. The Court is precluded from granting the Plaintiffs' motion for summary judgment.

**Conclusion**

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. Dkt. 159. The Defendants' Motions for Summary Judgment are also **DENIED**. Dkt. 175; Dkt. 212. The Defendants' Motion for Joinder is also **DENIED AS MOOT**. Dkt. 229.

It is so **ORDERED**.

January 31, 2022
Alexandria, Virginia

Liam O'Grady
United States District Judge